We'll move now to Appeal 25-1933, Chitwood v. Ascension Health Alliance. And we'll begin, Mr. Bruzzese, with you. Thank you. Judges, good morning, and may it please the court. This appeal, we've appealed on two issues, but effectively it can be resolved with the answering of a single, rather simple procedural question. May the district court resolve disputed issues of fact on a motion for summary judgment. Now, while we have appealed both the holding for the retaliation claim and the FMLA interference claim, the court's reporting of the absence to her employer was timely. Why in the voicemail did she not mention anything beyond the fact that she'd been shut out of the system? She didn't talk about her migraines. She didn't talk about anything that might indicate that she intended to return to work. That's a question that I think she does reference her intermittent leave, which was for migraines, in the call that she made a date of. My belief is, you know, she knew, it is in the record that there was some contentious exchange with her supervisor, her supervisors over the amount of time she had remaining on the continuous leave that she had also had approved. My understanding is she took it as, well, they've terminated me and tried to do what an HR professional does. She tried to say thank you for the opportunity and kind of leave on good terms. However, I think that phone call, while kind of a compelling piece of evidence, is not a positive piece of evidence. That call is not the call off to report the absence that is related to the FMLA claim. The November 16th phone call is. And of course it was established with what we've called the July absence report that it was accepted practice for my client in Ascension to allow her to call in these occasions on which she took FMLA leave, right? You're saying she reported the day after. Is that correct? That's correct, yes. And that's a July 12th absence reported on July 13th? That's correct, yes. But doesn't the record also show that on July 12th she texted her supervisor to tell her supervisor that she wouldn't be able to come in due to her is listed as the next day. And I think that's what creates the issue of fact here that cannot be resolved by the district court on summary judgment. It can't be resolved as a matter of law. There are, in fact, in the Sedgwick records, they're extensive. There's a number of different times, manners, means, texts, emails, et cetera, for how one would call off. The fact is in this particular case it had been accepted that a day after reporting, the July 13th reporting, was accepted practice. And we see no reason that it couldn't be accepted practice again on the November 16th reporting. I think this is such a fact-rich inquiry because there is so much of the back and forth. The evidence gets what I've called rather noisy in this case with the dispute over the continuous leave and the amount of time remaining. In fact, we had argued to the court whether or not time was remaining at some point and I think that's been resolved. The fact is this comes down to a very simple set of facts. The intermittent leave, the intermittent FMLA leave was approved. My client did have FMLA time remaining of the 480 hours allotted. She did call into the absence reporting line. That's what Sedgwick and Ascension requires, that you make this phone call to report your absence and that had been accepted in the past. So this really comes down to whether or not the district court may decide that the day after reporting, which had been acceptable in the past, is not acceptable. The court's language is something to the effect of she was not entitled to FMLA leave at that time because she was no longer an employee. And at first blush that seems to make sense, but I don't believe it is for the district court to resolve as a matter of law whether or not the call-off procedure was acceptable in that particular time. If we were to imagine that it was a requirement that you send an email and Ascension had terminated her appointment because nobody had yet read that email, it would be very similar, but my client has done what she is required to do to exercise her FMLA rights, her right to time off. And if Ascension, you know, in good faith even, terminated her employee before that email had been received, I don't think a court could say, well, they didn't know and, you know, they're able to get that termination in in this interim window. It's the same here, though it's a phone call. But again, it was accepted practice that that phone call could be made after the fact. Well, maybe during the course of employment, but there's no dispute that she had already been terminated by the time she made her retroactive attempt at notice. Well, that's true in the sense that there's no dispute that the employer took steps to terminate her. Now the question is, is it okay for them to do that? There's no dispute that she was terminated the day before she made her attempt at notice. Yes. Well, okay. And she, you know, called in and assumed she was fired and said, thank you for the opportunity to work for you. I suppose. So, I mean, there just are no facts to support a contrary interpretation that she was somehow not terminated the day before. There's reporting procedure that had been allowed in the past as a window to circumvent the FMLA protections. Had it not been that day after reporting was acceptable, you know, they certainly couldn't have terminated her and then said, okay, using the proper day of reporting that we would all expect to be the case. They couldn't say, well, we terminated you before you had a chance to report off. That's effectively what happened here. It just seems that there's this window of time where they can say, well, we don't know she's calling off yet and so we're terminating, even though you've got approved intermittent leave and time remaining to exercise it. That suggests that the employer has to anticipate when an employee is going to ask for leave and forbear from carrying out a termination. That's not an appropriate interpretation of the statute. I think that's not exactly correct. That's exactly what you're suggesting. They somehow took advantage of a window. They knew she was going to call in late and exploited that by firing her. The employer doesn't have to anticipate when an employee is going to request leave. That's the whole point of the notice requirement. We would certainly agree that the employee can anticipate when someone is going to request FMLA leave. But this was pre-approved intermittent leave. Intermittent leave by its nature is for migraine condition. My client can't anticipate when she's going to be stricken with a migraine. Then the employer can never fire if a grant of intermittent leave means that the employer must continuously forbear from any job action in anticipation of a potential for the invocation of the intermittent leave. That's a perverse interpretation of the statute. Again, and I see I'm running into my rebuttal time here, but I don't believe it is a perverse interpretation because the request for intermittent leave, clearly Ascension couldn't anticipate when that was going to happen. But the intermittent leave itself was approved. After that, we're beyond the statutory effect. It's just Ascension's call in procedure. How do you let us know you're going to exercise a day of your intermittent leave, which had been previously approved? And in this case, we think because Calaf, reporting the day after, had been accepted in the past, it should have been at this point. I would like to reserve the remainder of my time if I could. You may do so. Thank you, Mr. Berzuzzi. Ms. Conner for the appellee. Thank you. May it please the court. Ascension respectfully requests the court affirm the judgment of the district court in dismissing Ms. Chitwood's FMLA interference and retaliation claims with prejudice. With regard to Ms. Chitwood's interference claims, the parties do not really argue over the facts, and the law on this issue is well settled. And for those reasons, Ascension did not interfere with Ms. Chitwood's FMLA rights. Ascension terminated Ms. Chitwood's employment on November 15th, 2021, after she ignored direction from Ascension Human Resources via Mr. Gotsi, to return to work following the expiration of a continuous FMLA leave. Counsel, is it clear on the record what day Ms. Chitwood learned that her continuous FMLA had ended on November 3rd? I see in the record that it looks like Ascension learned that on November 11th, but I wasn't sure about Ms. Chitwood herself. Your Honor, she testified that she certainly knew by the 12th, if not by the 11th, that she was aware of the expiration of her continuous leave to care for her son. And that's an important fact here, that she was on continuous leave to care for her son, and it wasn't for her own health condition. And between November 4th and November 12th, Mr. Gotsi and Ms. Chitwood had multiple conversations. Ms. Chitwood also apparently spoke to Sedgwick during that time. So, as of November 12th, which is the Friday, Ms. Chitwood was aware her continuous leave had expired on November 3rd. Her application for non-job protected personal, non-FMLA leave had been denied. She had 32 hours of intermittent leave available to her, and that if she didn't return to work on Monday, November 15th, she would be terminated. Mr. Gotsi then directed Ms. Chitwood in the steps of how to return to work, including calling Associate Health to get reactivated to return to work. After she received this information, Ms. Chitwood did not take any of the steps she knew to take and had previously taken to apply for a new continuous leave or to use available intermittent leave that she had available to her. She also did not follow Mr. Gotsi's directions on how to return to work. Instead, as the court pointed out, on November 15th, the day she was to return to work, she called into the attendance line, said she assumed she had been terminated, and thanked Ascension for her employment. She did not mention any migraines, her own health condition, or any need for intermittent leave. Thus, later that day, on November 15th, Ascension terminated her employment. Ms. Chitwood was informed that her employment had been terminated that day. And then it was not until the following day, on November 16th, that Tuesday, that she called in and attempted to use intermittent FMLA leave for November 11th, 12th, and 15th. Ms. Chitwood cannot prove that Ascension wrongfully denied her FMLA rights to which she was entitled by terminating her employment. It's well established that an employer may terminate an employee who does not return to work following the expiration of a continuous FMLA leave, which is exactly what Ascension did here. In response to that well-settled rule, Ms. Chitwood doesn't really even attempt to argue that she notified Ascension ahead of her termination of her need for intermittent leave. Ms. Chitwood's attempts to circumnavigate the precedent by pointing to her after-the-fact request for intermittent leave misses the mark. Ms. Chitwood's effort to use FMLA leave on November 16th after her termination did not comply with Ascension's call-in procedures. And as the Court knows, both regulation and case law establish that employers may require that employees follow their call-in procedures to use FMLA leave. To report absences for intermittent leave, Ascension's call-in procedures required Ms. Chitwood to report the absences to Sedgwick, which was Ascension's third-party administrator, and call the attendance line or let her supervisor know. Ms. Chitwood did not do this. She doesn't even allege that she attempted to. And this is despite the fact that she was talking to Mr. Godsey extensively during this week. She doesn't mention her own health condition. She doesn't say she needs to use intermittent leave. She did not, under the notice provisions, report her leave as soon as practicable. Counsel, can I ask you a few questions about her retaliation claim? Yes. There is, you know, there are these e-mails and chats in the record that reflect that people at Ascension were already sort of displeased or concerned about Ms. Chitwood's attendance before the November 15th failure to return to work. Did she have attendance issues outside of legitimate use of FMLA that could have prompted those concerns? Yes, she had received a written warning prior to her—they call it a corrective action—prior to the beginning of her continuous leave related to non-FMLA attendance occurrences. Okay. And what is the correct causation standard for FMLA retaliation claims? You know, the relationship between the FMLA-protected activity and here, the termination. It's a but-for causation, Your Honor. So, but for engaging in the protected activity, she would not have been terminated. And unlike an interference claim, obviously a retaliation claim requires proof of some intent, which Ms. Chitwood and Mr. Brzezis point to these two communications that the judge mentioned. The first is between Mr. Godsey and his boss, Laura Majewski, talking about a number of things, including another internal complaint Ms. Chitwood had made regarding discrimination. And, you know, they interpret that to display discriminatory animus. We think they misinterpret what they're saying in those emails, but regardless, neither Mr. Godsey nor Ms. Majewski was a decision-maker with regard to Ms. Chitwood's termination. They were in HR. They were dealing with those issues. Comments by non-decision-makers aren't dispositive of retaliatory animus. Likewise, Mr. Brzezis points to a chat, like an instant message, between Mr. Godsey and Janine Guzik, who was Ms. Chitwood's supervisor. In that chat, they're talking about how to code Ms. Chitwood's termination internally in Ascension Systems, both from a, you know, they have a drop-down menu and how do you code it. And one of them was, you know, unreliable performance. And they ultimately opted for that option, both because she didn't return from her leave and because of the prior corrective action that she had received. And then there was a question about whether she would be re-hireable. There's nothing in that chat that says we dislike Ms. Chitwood because she took FMLA leave or implies any type of retaliatory animus. So there's simply no evidence to support such a claim of retaliation under the FMLA standard. Ms. Conner, Ascension is a very large entity. Yes. Ms. Chitwood worked in HR. A number of these players worked in HR. Yes. Any idea, can you tell us how large the HR department is in Ascension? We're talking about hundreds of employees, thousands of employees, just a few employees. Hundreds, yeah. And there are different iterations of it. Ms. Chitwood worked in a call center. Essentially, employees would call her and say, I need FMLA, what should I do? She would refer them to Sedgwick. Or, I didn't get my paycheck last week, and so she would do that. And then Mr. Godsey and her boss, Ms. Gusick, supervised a team of employees who handled that type of work. Mr. Godsey worked in, I would fashion, a more sophisticated area of the HR where we perform investigations, we analyze whether employees should be terminated, that type of thing. So there are different iterations, and they worked in different departments. But under the umbrella of human resources, there are hundreds of employees. And the intent of the question, my question is, would there have been something below the water level? Is this the tip of the iceberg, or are there other problems that would have existed? Because the plaintiff here is in the same department as some of the actors that we're hearing from. Oh, I see what you're saying, as in there's some taint in between them. No, Your Honor. I think there was testimony that Mr. Godsey did not really know Ms. Chitwood at all before this incident. Thank you. Thank you, Ms. Conner. Mr. Berzuzzi, we'll go to you for rebuttal. We'll give you a full minute here. And I can keep it brief. What we're hearing from my colleague here and the questions from the bench are questions about the e-mail evidence of animus, and so on and so forth, and the evidence of, you know, was the call-off procedure too late? Was that acceptable? And I think what we're hearing is factual questions. These are factual questions that need resolved by the jury. I have many of these questions myself. Ascension did as well. Clearly the district court did, but the district court chose to resolve those factual issues and find in favor of Ascension on a summary judgment motion. That the district court cannot do. These factual questions do need resolved by the trier of fact, and that's the jury in this case. So for those reasons, we're asking for this case to be reversed and remanded with instructions that both claims proceed to the jury. Thank you. Thank you, Mr. Berzuzzi. Thank you, Ms. Conner. The case will be taken under advisement.